PD-0847&0848-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/13/2015 5:27:20 PM
Accepted 8/17/2015 2:07:28 PM
ABEL ACOSTA
CLERK

**Nos. PD-0847-15 & PD-0848-15**

In the

Court of Criminal Appeals

At Austin

──────────◆──────────

**Nos. 14-14-00154-CR & 14-14-00155-CR**

In the

Court of Appeals

For the

Fourteenth District of Texas

At Houston

──────────◆──────────

**Nos. 1323841 & 1390391**

In the 185th District Court

Of Harris County, Texas

──────────◆──────────

**KOJUAN J. MILES**

*Appellant*

V.

**THE STATE OF TEXAS**

*Appellee*

──────────◆──────────

STATE'S PETITION FOR DISCRETIONARY REVIEW

──────────◆──────────

FILED IN
COURT OF CRIMINAL APPEALS

August 17, 2015

ABEL ACOSTA, CLERK

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**DAN McCRORY**
Assistant District Attorney
Harris County, Texas

**ANN JOHNSON**
**ALLEN OTTO**
Assistant District Attorneys
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
Tel.:  713/755-5826
FAX No.:  713/755-5809
*Counsel for Appellee*

ORAL ARGUMENT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 68.4(d), the State requests oral argument so that any questions this Court may have about these unique and novel issues may be addressed in full.

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 68.4(a), a complete list of the names of all interested parties is provided below.

*Victim:*

**A.J.**—a juvenile

*Counsel for the State:*

**Devon Anderson,** District Attorney of Harris County
**Dan McCrory,** Assistant District Attorney on appeal
**Ann Johnson,** Assistant District Attorney at trial
**Allen Otto,** Assistant District Attorney at trial
   1201 Franklin, Suite 600, Houston, Texas 77002

**Lisa McMinn**, State Prosecuting Attorney
   P. O. Box 13046, Austin, Texas 78711

*Appellant or criminal defendant:*

**Kojuan J. Miles**

*Counsel for Appellant:*

**Jules Johnson**—Counsel at trial
**Mark Hochglaube**—Counsel at trial

i

**Nicolas Hughes**—Counsel on appeal
   Assistant Public Defenders, Harris County, Texas
   1201 Franklin, 13th Floor, Houston, Texas 77002

**Deborah Summers**—Counsel at trial
11210 Steeplecrest, Suite 120
Houston, Texas 77065


*Trial Judges:*

**Honorable Marc Brown**—Presiding Judge
**Honorable Susan Brown**—Presiding Judge

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................................................... i

IDENTIFICATION OF THE PARTIES ................................................................... i

INDEX OF AUTHORITIES ............................................................................ iv

STATEMENT OF THE CASE ........................................................................... 1

STATEMENT OF THE PROCEDURAL HISTORY ........................................................... 1

QUESTION PRESENTED FOR REVIEW .................................................................. 2

    Did the court of appeals err in holding that section 3.03(b) of the Texas Penal Code
does not allow the cumulation of sentences for two offenses listed within different
paragraphs of subsection (b) of the stacking statute? ........................................ 2

PRAYER FOR RELIEF ............................................................................. 21

CERTIFICATE OF SERVICE ........................................................................ 22

CERTIFICATE OF COMPLIANCE ..................................................................... 23

# INDEX OF AUTHORITIES

**CASES**

*Boykin v. State*,
818 S.W.2d 782 (Tex. Crim. App. 1991) ................................................................. 19

*Butcher v. State*,
454 S.W.3d 13 (Tex. Crim. App. 2015) .................................................................. 16

*Chase v. State*,
448 S.W.3d 6 (Tex. Crim. App. 2014) ........................................................ 16, 17, 20

*Jourdan v. State*,
428 S.W.3d 86 (Tex. Crim. App. 2014) .................................................................. 18

*Miles v. State*,
No. 14-14-00154-CR, 2015 WL 3751704 (Tex. App.--Houston
[14th Dist.] June 16, 2015, pet filed) ...................................... 1, 3, 4, 5, 6, 13, 14, 15, 16

*Nguyen v. State*,
359 S.W.3d 636 (Tex. Crim. App. 2012) ................................................................ 16

*Parfait v. State*,
120 S.W.3d 348 (Tex. Crim. App. 2003) ................................................................ 20

**STATUTES**

TEX. GOV'T CODE ANN. § 311.021 (West 2013) ............................................................ 17

TEX. PEN. CODE ANN. § 3.03 (West Supp. 2014) ...................................... 2, 12, 14, 15, 28

**OTHER AUTHORITIES**

Act of April 7, 2011, 82nd Leg., R.S., ch. 1, § 6.01 ....................................................... 12

Act of May 17, 2013, 83rd Leg., R.S., ch. 228, § 1 ....................................................... 12

Act of May 23, 2005, 79th Leg., R.S., ch. 527, § 1 ......................................................... 9

Act of May 25, 1995, 74th Leg., R.S., ch. 596, § 1 ......................................................... 7

Act of May 27,2007, 80th Leg., R.S., ch. 1291, § 6............................................................... 11

Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 2............................................................... 8

Act of May 31, 2009, 81st Leg., R.S., ch. 1130, § 21 .......................................................... 11

Acts 1973, 63rd Leg., R.S., ch. 399, § 1.............................................................................. 7

GARNER'S DICTIONARY OF LEGAL USAGE (3d ed. 2011) ............................................. 15, 17

House Research Organization, Bill Analysis from House Criminal Jurisprudence
Committee, H.B. 220 (April 18, 2013)......................................................................... 16

**RULES**

TEX. R. APP. P. 39.7.............................................................................................................i

TEX. R. APP. P. 66.3............................................................................................................ 2

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

## STATEMENT OF THE CASE

In cause number 1323841, appellant was charged by indictment with the offense of sexual assault of a child. (CR I 14).[1]  In cause number 1390391, appellant was charged by indictment with the offense of compelling prostitution. (CR II 16).  After finding appellant guilty of both charged offenses, the jury assessed punishment at seven-years confinement for the sexual assault offense and 23-years confinement for the compelling prostitution offense. (CR I 261; CR II 474).  In cause number 1390391, the judge entered a cumulation order, directing the sentences to be served consecutively. (CR II 474-475).

## STATEMENT OF THE PROCEDURAL HISTORY

On June 16, 2015, a panel of the Fourteenth Court of Appeals issued a published opinion in which it affirmed appellant's two convictions, but ordered the deletion of the cumulation order.  *Miles v. State*, No. 14-14-00154-CR, 2015 WL 3751704 (Tex. App.--Houston [14th Dist.] June 16, 2015, pet filed).  Specifically, the Court modified the judgment in cause number 1390391 to delete the cumulation order.  *Id.*  No motion for rehearing was filed.

---

[1]  "CR I" refers to the clerk's record for cause number 1323841.
"CR II" refers to the clerk's record for cause number 1390391.

## QUESTION PRESENTED FOR REVIEW

Did the court of appeals err in holding that section 3.03(b) of the Texas Penal Code does not allow the cumulation of sentences for two offenses listed within different paragraphs of subsection (b) of the stacking statute?

1. Reason for granting review

Review of this question presented should be granted because the Fourteenth Court of Appeals decided an important question of state law that has not been, but should be, decided by this Court. TEX. R. APP. P. 66.3(b). Namely, this Court should determine the scope of the stacking provision provided by section 3.03(b) of the Texas Penal Code.

2. Argument

2.1 The stacking statute – Section 3.03

A trial judge's authority to stack a defendant's sentences is found in section 3.03 of the Texas Penal Code. TEX. PEN. CODE ANN. § 3.03 (West 2014). This statute contains two subsections, (a) and (b). The plain language of subsection (a) provides that a defendant found guilty of more than one offense in a single trial will have his sentences run concurrently. Subsection (b), however, provides exceptions to this general rule by listing a number of offenses for which multiple sentences may run consecutively under certain circumstances.[2] *Id*.

## 2.2 Relevant facts

Appellant was convicted of two offenses – compelling prostitution and sexual assault of a child. (CR I 261; CR II 474). Subsection 3.03(b) lists both of these offenses. The offense of sexual assault is in subsection (b)(2) and the offense of compelling prostitution is in subsection (b)(5).

When the State moved to cumulate the sentences at trial, appellant argued that only sentences for offenses listed in the same paragraph of subsection (b) could be stacked together. (RR X 77-83). The State maintained that sentences for any offenses listed under subsection (b) could be stacked. The trial judge agreed with the State and stacked appellant's sentences. (RR X 77-83).

## 2.3 The court of appeals's opinion

Based on its interpretation of the plain meaning of the text of the statute, the Fourteenth Court of Appeals agreed with appellant and held that a sentence for an offense listed in subsection (b) may be stacked only with a sentence for another offense listed in the same paragraph. *Miles*, 2015 WL 3751704, at \*8-13. In other words, sentences for two offenses listed in subsection (b)(2) may be stacked, but a sentence for an offense in subsection (b)(2) may not be stacked on a sentence for an offense in subsection (b)(5) (as occurred in this case). *Id*. at \*10, 13.

---

[2] The full text of this lengthy statute is attached to this brief in Appendix B.

3

Since this issue is one of statutory interpretation, the appellate court examined section 3.03(b) under the general principles of statutory construction. The court focused on the literal text of the statute in an effort to determine the collective intent of the legislators who enacted the statute. *Id*. at \*8. In conducting its textual analysis, the court found that several aspects of the statute's plain language rendered appellant's interpretation of the statute the only reasonable reading of it. *Id*. at \*10.

First, the appellate court noted that subsections (b)(1), (b)(3), and (b)(5) list only two offenses within each particular paragraph. For example, subsection (b)(5) provides that sentences may be stacked if each sentence is for a conviction for an offense under section 20A.02 (human trafficking) or section 43.05 (compelling prostitution), "regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of **both sections**." *Miles*, 2015 WL 3751704, at \*10 (original bolding and italics).

The court held that if all offenses listed in subsection (b) could be stacked as urged by the State, the references to "both sections" in subsections (b)(1), (b)(3), and (b)(5) would be meaningless. *Id*. It concluded that subsections (b)(1), (b)(3), and (b)(5) each list only two offenses, so the phrase "both sections" necessarily indicates that the Legislature intended the stacking of only those two offenses listed together. *Id*.

Second, the appellate court observed that subsections (b)(1), (b)(2), (b)(3), (b)(5), and (b)(6) each includes a paragraph (B) that refers to convictions obtained by plea agreements for which the defendant was charged with "more than one offense *listed in Paragraph (A)*." *Miles*, 2015 WL at \*11 (original bolding and italics). The court concluded that the Legislature's use of this phrase in each paragraph (B) suggests that the Legislature intended only for offenses listed in the companion paragraph (A) to be stacked together. *Miles*, 2015 WL 3751704, at \*11.

Third, the appellate court looked to the manner in which section 3.03(b) was amended over time. *Id*. at \*11-12. Each of the six paragraphs under subsection (b) was added to the statute during different legislative sessions. *Id*. at \*11. Sometimes the Legislature added a new offense to the stacking statute by placing it in a newly-created paragraph, but on other occasions it added a new offense to an existing paragraph. For example, in 2005, the Legislature added the offense of intoxication assault to the existing subsection (b)(1), but created the new subsection (b)(3) and included the offenses of child pornography and improper photography in it. *Id*. at \*12; Act of May 23, 2005, 79th Leg., R.S., ch. 527, § 1. 2005 Tex. Gen. Laws 1430-31. The court determined that the only logical reason for doing so – placing one new offense in a preexisting subsection and another in a new subsection – is that the Legislature did not intend for the two particular offenses to be subject to cumulation. *Miles*, 2015 WL 3751704, at \*12.

5

Based on these three considerations, the appellate court concluded that the unambiguous plain language of section 3.03(b) provides that a sentence for compelling prostitution may not be stacked with a sentence for sexual assault of a child. *Id*. at 13.

2.4 State's response to the court of appeals's opinion

The appellate court erred in finding that the plain language in subsection 3.03(b) demonstrates that sentences for offenses listed in that subsection may be stacked only with sentences for offenses listed in the same paragraph and it further erred by determining that the statutory language is unambiguous.

2.4.1  The plain text of the statute does not reflect a legislative intent to restrict sentence stacking to offenses within the same paragraph

As mentioned, the court of appeals found it significant that subsections (b)(1), (b)(3), and (b)(5) each lists only two offenses [sections] and provides that stacking is permitted if the defendant is convicted of violations of the same section more than once or is convicted of violations of "both sections."  The appellate court found the use of the phrase "both sections" in these three paragraphs to be inconsistent with a legislative intent to allow stacking of all offenses spread across the six paragraphs. *Miles*, 2015 WL 3751704, at *10.

The Legislature's use of the term "both sections," however, is simply the practical result of the manner in which section 3.03 was amended over a number of legislative sessions rather than an indication of the legislative intent divined by the

6

court of appeals. The Legislature added section 3.03 to the Texas Penal Code in 1974. Acts 1973, 63rd Leg., R.S., ch. 399, § 1. At that time, the statute provided that when a defendant is found guilty of more than one offense in a single trial, the sentences shall be served concurrently. There was no subsection (b), meaning there was no exception to the general rule that sentences under this statute must be served concurrently. So the statute did not yet contain the phrase "same sections."

In 1995, the Legislature amended the statute by adding subsection (b), thereby creating the first exception to the general rule prohibiting the stacking of sentences resulting from a single trial. Act of May 25, 1995, 74th Leg., R.S., ch. 596, § 1. The newly-created subsection (b) read: "If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of an offense under section 49.08 [intoxication manslaughter]." *Id.* So at this point, sentences for only one offense could be stacked pursuant to section 3.03. As such, the term "same sections" still had not entered the language of the statute.

In 1997, the Legislature again amended section 3.03 by providing a second paragraph under subsection (b) which contained a list of five sex-related offenses (indecency with a child, sexual assault, aggravated sexual assault, prohibited sexual conduct, and sexual performance of a child). The availability for stacking

7

sentences for these five offenses, however, was limited to cases in which the victim was younger than 17 years old. Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 2.

So, following this amendment, subsection (b)'s first paragraph, (b)(1), contained the offense of intoxication manslaughter, while the second paragraph, (b)(2), contained the five newly added offenses. *Id.* In this form, the statute allowed the stacking of sentences for the offense of intoxication manslaughter "or" the five sex-related offenses. Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 2. After this amendment, there still was no reference to the phrase "same sections." *Id.*

At this point in the evolution of the statute, it could be asked why did the Legislature not simply add the five new offenses in the same paragraph as the existing offense if it intended for sentences for any of the six offenses to be stackable upon one another? While placing all the offenses within one paragraph likely would have removed any doubt about a legislative intent to allow sentences for all six offenses to be stackable interchangeably, such a construction of the statute would not have been practical because sentences for all convictions for intoxication manslaughter are stackable but sentences for the other five offenses are stackable only if the offense was committed against a victim younger than 17 years old.

So it made sense for the Legislature to place those five offenses in a separate paragraph so that the qualifier regarding the victim's age could be added to those five particular offenses and be made applicable only to them. In other words, the creation of the second paragraph did not signal a legislative intent to limit the ability to stack offenses to circumstances involving only offenses within the same paragraph. Rather, the separation of the offenses into two separate paragraphs was simply consistent with a legislative effort to clarify that the victim-age requirement applied only to the five new offenses and not intoxication manslaughter.

The Legislature next amended section 3.03 in 2005 by adding the offense of intoxication assault to subsection (b)'s first paragraph and creating a third paragraph in which two offenses, improper photography and possession of child pornography, were added to the list of stackable offenses. Act of May 23, 2005, 79th Leg., R.S., ch. 527, § 1. It made sense for the Legislature to add the new offenses in this manner because, as a result of the 1997 amendment, it had already begun to place related offenses in separate paragraphs, not because it intended for stacking to be available only for offenses within the same paragraph, but so that it could separate the subsection (b)(2) offenses from the (b)(1) offenses for purposes of applying the victim-age qualifier only to the (b)(2) offenses.

So, the Legislature added intoxication assault to subsection (b)(1) since it was related to that subsection's existing offense, intoxication manslaughter. And it

9

added the two other new offenses, which are related to one another by virtue of both involving unlawful sexual images, in the newly-created subsection (b)(3). Of course, it would not have been practical to add these two new offenses to (b)(2) since these new offenses were not intended to be subject to (b)(2)'s victim-age qualifier.

The 2005 amendment also provides the first appearance of the phrase "both sections," which the court of appeals deemed compelling in reaching its determination that the plain language of the statute signals a legislative intent to not allow stacking of offenses from different paragraphs. Such language, however, does not necessarily evince such a legislative intent. Rather, this language is the practical result of the manner in which this statute was constructed over a number of legislative sessions. Since subsection (b)(1), in its original form, allowed stacking only for multiple commissions of the one offense of intoxication manslaughter, the addition of the term "both sections" made it clear that the newly created stacking options were not limited to multiple commissions of a single offense as had previously been the case under subsection (b)(1). In other words, the "both sections" clarifies that the amended subsection (b)(1) allows stacking of sentences for both offenses listed in that paragraph, but it does not indicate an intent to segregate the subsection (b) paragraphs for stacking purposes.

10

The Legislature amended the statute again in 2007 by adding the offense of online solicitation of a minor to subsection (b)(2). Act of May 27,2007, 80th Leg., R.S., ch. 1291, § 6. It was reasonable for the Legislature to place this new offense in an existing paragraph, (b)(2), so that the offense could be placed under the application of this particular paragraph's unique qualifier based on the victim's age.

When the Legislature amended the statute in 2009, it added a fourth paragraph under subsection (b) which added to the stacking equation any offense for which the judgment contained an affirmative finding that the offense was committed as part of the activities of a criminal street gang. Act of May 31, 2009, 81st Leg., R.S., ch. 1130, § 21. Again, it made sense to house this broad category of offenses in a separate paragraph as a practical organizational tool since the offenses made available for stacking in this paragraph had the unique qualifier of a particular affirmative finding. So the creation of a fourth paragraph did not signal a legislative intent to limit stacking to offenses within a particular paragraph. Rather, it likely was done to avoid any confusion that might result from placing the affirmative-finding requirement in an existing paragraph containing offenses that are stackable without such an affirmative finding.

In 2011, the Legislature added two more offenses to subsection (b), human trafficking and compelling prostitution, and placed them in a newly created fifth

11

paragraph.  Act of April 7, 2011, 82nd Leg., R.S., ch. 1, § 6.01.  The fifth paragraph contains the same language about "both sections" found in the other two paragraphs that contain only two offenses, subsections (b)(1) and (b)(3).  TEX. PEN. CODE ANN. § 3.03(b)(5) (West Supp. 2014).  It was reasonable for the Legislature to add these two related offenses by creating a new paragraph because, beginning with the 1995 addition of subsection (b)(2), the Legislature had already placed similar offenses in separate paragraphs for reasons other than an intent to preclude stacking offenses from different paragraphs (namely, the second paragraph was created to group offenses intended to be subject to the victim-age qualifier).

In 2013, the Legislature added two more offenses to subsection (b), injury to a child or an elderly or disabled person and injury to a group home facility resident, and placed them in a newly created sixth paragraph.  Act of May 17, 2013, 83rd Leg., R.S., ch. 228, § 1.  But the legislature mandated that these offenses were available for stacking only if they were committed in such a way as to make them a first degree felony.  TEX. PEN. CODE ANN. § 3.03(b)(6) (West Supp. 2014).  Since the use of these two offenses was qualified by this condition, it was reasonable to place them in a separate paragraph so as the clarify that these two offenses were the only offenses within subsection (b) that were subject to the first-degree felony requirement, similar to the manner in which subsection (b)(2) was

created to clarify that only the offenses in subsection (b)(2) were subject to the victim-age requirement.

Therefore, as explained in this detailed description of section 3.03(b)'s evolution over a number of legislative sessions, the phrase "both sections" entered the statutory language as a practical result of the organizational manner in which the statute developed over time, not as the result of a legislative intent to restrict stacking to offenses within the same paragraph. Accordingly, the court of appeals's reliance on this phrase to arrive at a restrictive interpretation of legislative intent was misplaced. *Miles*, 2015 WL 3751704, at \*10.

Similarly, regarding the court of appeals's reliance on the fact that subsections (b)(1), (b)(2), (b)(3), (b)(5), and (b)(6) each includes a paragraph (B) that allows stacking for plea-bargained convictions and which refers back to its companion paragraph (A) to infer a legislative intent to allow stacking only for offenses listed in the particular companion paragraph (A), the construction of the (B) paragraphs is again the result of the manner in which the statute evolved rather than evidence of the legislative intent inferred by the appellate court. *Id.* at 11.

Specifically, it was not feasible to provide a single paragraph (B) to apply to and refer back to all six of the paragraph (A)s because subsection (b)(4) does not even have a paragraph (B) and subsections (b)(2) and (b)(6) have modified versions of the paragraph (B) version found in the remaining three paragraphs.

TEX. PEN. CODE ANN. § 3.03(b) (West Supp. 2014). Since there is not uniformity in the language of all the paragraph (B)s, it was necessary to provide an individual paragraph (B) for each of the six subsection (b) paragraphs, with the exception of subsection (b)(4), appropriately worded for each paragraph (A). As such, the reference back to the companion paragraph (A) in each paragraph (B) does not signal a legislative intent to restrict which offenses may be stacked together. Rather, the language is the practical result of the need to tailor each paragraph (B) to its companion paragraph (A).

Likewise, the court of appeals erred by discerning a legislative intent based on the fact that some new offenses were added to section 3.03 by placing them in an existing subsection (b) paragraph, while other offenses were added by placing them in a newly created paragraph. *Miles*, 2015 WL 3751704, at *12. As mentioned in the detailed discussion of the various legislative amendments, the Legislature fell into the pattern of placing similar offenses within their own paragraph, beginning with the creation of subsection (b)(2) offenses which were all sex-related offenses and required their own paragraph so as to accommodate the victim-age qualifier. So, again, the manner in which new offenses were added to section 3.03 over times reflects an organizational pattern rather than a legislative intent to restrict sentence stacking to offenses within the same paragraph.

Accordingly, given the piece-meal manner in which the statute was created over time by numerous legislative amendments, the court of appeals erred in determining that the plain meaning of the text of the statute dictates that appellant's interpretation of the statute is the only reasonable one. *Miles*, 2015 WL 3751704, at \*10.

If anything, any plain meaning drawn from the statute's text would favor the State's interpretation. Significantly, the six paragraphs within subsection (b) are separated by the word "or" as reflected by its presence at the end of the fifth paragraph and before the sixth paragraph. TEX. PEN. CODE ANN. § 3.03(b) (West Supp. 2014). The well-known legal writing scholar, Bryan Garner, has recognized that "or" has both an inclusive and exclusive sense, but explained that the meaning of "or" is usually inclusive. GARNER'S DICTIONARY OF LEGAL USAGE 639 (3d ed. 2011). Therefore, the common usage of the term "or" indicates that the legislature intended to collectively include the offenses from all six paragraphs for purposes of stacking, which is consistent with the State's interpretation of the statute's plain language and would allow the stacking of appellant's two sentences.

## 2.4.2 If the statutory language is ambiguous, extratextual factors favor the State's interpretation

Despite acknowledging that the word "or," which appears between subsections (b)(5) and (b)(6), can be interpreted in two ways (as either inclusive or exclusive), the court of appeals nevertheless ruled that section 3.03's language was

unambiguous. *Miles*, 2015 WL 3751704, at \*11, 13. Typically, however, when a statutory term is susceptible to different meanings, it renders the statute ambiguous. *Butcher v. State*, 454 S.W.3d 13, 16-17 (Tex. Crim. App. 2015); *Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014). When a statute is ambiguous, legislative intent may be deciphered by consulting extratextual factors. *Chase*, 448 S.W.3d at 11. Since the use of the word "or" renders section 3.03 ambiguous, extratextual factors may be considered. *Id.* (listing factors that may be contemplated).

One factor that may be considered is legislative history. *Id.* This Court has found that a bill analysis from the House Research Organization may be compelling evidence of legislative intent relating to section 3.03. *Nguyen v. State*, 359 S.W.3d 636, 643-45 (Tex. Crim. App. 2012). In 2013, the House Research Organization issued a bill analysis of the proposed addition of paragraph six to section 3.03(b). House Research Organization, Bill Analysis from House Criminal Jurisprudence Committee, H.B. 220 (April 18, 2013). In providing background for the statute, the authors explained that section 3.03 provides:

> Sentences for convictions or plea agreements for the following offenses may run concurrently or consecutively:
>
> - intoxication assault or manslaughter;
> - online solicitation of a minor;
> - continuous sexual abuse of a child;
> - indecency with a child;

16

- sexual assault or aggravated sexual assault;
- incest;
- sexual performance by a child;
- improper photography or visual recording;
- possession or promotion of child pornography;
- trafficking of persons; *and*
- compelling prostitution.

*Id*. (emphasis added). The use of the word "and" to connect all the offenses which are found across the several paragraphs within subsection (b) indicates an inclusive connotation evincing a legislative intent to allow the stacking of all offenses listed in subsection (b) regardless of whether the offenses appear in different paragraphs.

An inclusive interpretation of the word "or" in section 3.03 between subsections (b)(5) and (b)(6) is also consistent with the teachings of Bryan Garner, who recognized that "or" has both an inclusive and exclusive sense, but explained that the meaning of "or" is usually inclusive. GARNER'S DICTIONARY OF LEGAL USAGE 639 (3d ed. 2011). Therefore, this factor militates in favor of finding that section 3.03 permits stacking for all the offenses listed in subsection (b).

Another extratextual factor to consider is the consequences of a particular construction of a statute. *Chase*, 448 S.W.3d at 11. It is presumed that the Legislature intended a "just and reasonable result." TEX. GOV'T CODE ANN. § 311.021(3) (West 2013). The court of appeals's interpretation of section 3.03(b) creates absurd results. For purposes of demonstrating the potential absurdity, consider two scenarios. In scenario one, a man commits two separate offenses of

17

sexual assault by penetrating his underaged girlfriend's sexual organ with his finger and also causing his penis to contact her sexual organ during a single encounter. *See Jourdan v. State*, 428 S.W.3d 86, 97 (Tex. Crim. App. 2014). He is convicted of both offenses in a single trial and receives a 20-year sentence for each offense. Even under appellant's interpretation of section 3.03, the trial court may stack these two sentences (effectively a 40-year sentence) because both offenses for which the defendant was convicted appear in the same paragraph, subsection (b)(2).

In scenario two, the same man causes his penis to contact his underaged girlfriend's sexual organ a single time, but with no digital penetration. Later in the day, the man compels his girlfriend to engage in an act of prostitution with a stranger who has sexual intercourse with the girl. The man is convicted of sexual assault and compelling prostitution and, like the first scenario, receives a 20-year sentence for each offense. However, under appellant's interpretation, the judge could not stack this defendant's two sentences because they are for offenses found in separate paragraphs, (b)(2) and (b)(5). So, effectively, this defendant would face a 20-year sentence (two concurrent 20-year sentences).

It would be absurd for the man in scenario one who sexually assaulted his girlfriend twice in a single encounter to be punished twice as severely as the man in scenario two who also sexually assaulted his girlfriend but then further forced

18

her to be sexually assaulted by a stranger as a result of the compelled act of prostitution. The second scenario seems much more egregious since the victim is subjected to unwanted sex from a stranger under circumstances that brand her a prostitute.

In a similar vein, it would be absurd to allow the stacking of two sexual assaults under subsection (b), but not allow the stacking of sexual assault and compelling prostitution simply because they are in different paragraphs. By its nature, the offense of compelling prostitution often will include a sexual assault as well. In others words, when a defendant forces an underaged girl to have sex with someone for money, the defendant is committing the offense of compelling prostitution but the man paying to have sex with the juvenile is committing the offense of sexual assault. Since the offense of compelling prostitution frequently includes a sexual assault, it would be absurd to not permit these two offenses to be stacked given the Legislature's unquestionable expressed interest in allowing stacked sentences for similar offenses. Therefore, consideration of these potential consequences militates in favor of finding that section 3.03 permits stacking for all of the offenses listed in subsection (b).[3]

---

[3] These absurd results also demonstrate why the State's interpretation of the statute should prevail even if the *plain* language of the statute is found to favor appellant's interpretation. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (when application of statute's plain language would lead to absurd results, courts should not apply the language literally).

Another extratextual factor to consider in determining legislative intent is the object sought to be obtained by the statute. *Chase*, 448 S.W.3d at 11. One goal of section 3.03(b) is to protect the innocent from predators. *See Parfait v. State*, 120 S.W.3d 348, 351 (Tex. Crim. App. 2003). Punishing the defendant in scenario two much more leniently than the less culpable defendant in scenario one is inconsistent with the goal of protecting the innocent. So this factor also demonstrates that section 3.03 should be interpreted as allowing stacking for all the offenses in subsection (b).

Consideration of these extratextual factors demonstrates that the Legislature intended for sentences for all offenses listed in subsection (b) to be stackable with one another. Accordingly, appellant's two sentences for the offenses of sexual assault and compelling prostitution may be stacked together, meaning the trial judge did not err in entering the cumulation order. The court of appeals erred in holding otherwise.

# PRAYER FOR RELIEF

It is respectfully requested that this petition be granted and the court of appeals's deletion of the cumulation order in cause number 1390391 be reversed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 13489950
mccrory_daniel@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent to the

following email addresses via TexFile:

Nicolas Hughes
Assistant Public Defender
Nicolas.hughes@pdo.hctx.net

Lisa C. McMinn
State Prosecuting Attorney
Lisa.McMinn@spa.texas.gov

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
TBC No. 13489950

# CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 4,370 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 13489950

Date: 8/13/2015

APPENDIX A - *Miles v. State* opinion



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-14-00154-CR**
**NO. 14-14-00155-CR**

---

**KOJUAN J MILES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1323841, 1390391**

---

## O P I N I O N

A jury found appellant Kojuan Miles guilty of compelling prostitution and sexual assault of the complainant, a fifteen-year-old girl. The jury assessed punishment at twenty-three years' and seven years' confinement, respectively, and the trial court cumulated the sentences. Appellant contends the trial court erred by excluding relevant evidence from the complainant's Facebook page during both phases of the trial, admitting irrelevant expert testimony during the guilt phase of

the trial, cumulating his sentences, and signing judgments with unnecessary verbiage describing his offenses.

We overrule appellant's evidentiary issues and his issue concerning the verbiage of the judgments. In an issue of first impression, however, we hold that the trial court erred by cumulating sentences that resulted from a single criminal action under Section 3.03(b) of the Texas Penal Code for convictions of compelling prostitution and sexual assault of a child. We modify the trial court's judgment in the compelling prostitution case to delete the cumulation order, affirm that judgment as modified, and affirm the trial court's judgment in the sexual assault case.

## I. BACKGROUND

The complainant, Amy,[1] testified that she lived with at least seven relatives in a single motel room in North Carolina. She met appellant in mid-October 2011 when she was fifteen and he was twenty-two. He was the cousin of her friend. He took Amy out to eat at a fast-food restaurant and was teaching her how to drive. She thought he was nice and cute, and he made her "feel like somebody."

Amy told appellant about her difficult family situation, and he suggested that she leave with him for Los Angeles. She wanted to go, so she packed some clothes and left with him the following morning. Amy hoped that appellant would be her boyfriend. She thought appellant would take care of her.

They drove for two days, and at some point Amy told appellant that she wanted to go home. He said they were too far and could not turn back around. She felt trapped. When they arrived at a truck stop in Houston, appellant asked Amy to perform oral sex on him. She complied. Then they stayed overnight at a

---

[1] We use a pseudonym for the child complainant.

2

house in Houston.  He shook her awake at night and had sex with her—he put his penis inside her vagina.

The next morning, appellant told Amy that they did not have any more money for food or gas, and they had nowhere to stay.  Amy testified, "[S]o he said that I would have to sell my body."  She did not want to do it, but she complied because she was thinking "how we going to eat and stuff."  He told her to take off her panties so that it would be easy and she would not have to take them off when she got to a guy.  He told her to not go for the young guys and to go for the older guys and ones with accents.  He told her that when a car pulls up, she should ask them if they want a date and get in the car.  He told her to charge $60 for sex and $50 for head, i.e., oral sex.  He also told her that if she were caught by police, she should use her sister's name and date of birth because the sister was eighteen years old.

Appellant made contact with another prostitute who was "walking" like Amy.  Appellant told Amy that this other woman was going to be Amy's "wifey."[2] Amy testified that she had sex eight times, although she told a doctor at the Children's Assessment Center (CAC) that she had sex with three people.  After being paid, Amy would call appellant to come pick her up.  He would tell her, "Give me the bread," i.e., money, and Amy gave it to him.

At 3:40 a.m. the following morning, appellant and Amy were sitting in a parked car in an area known for prostitution—it was a "track" where prostitutes walk the streets.  Houston Police Department officers suspected prostitution activity and investigated further.  Because Amy looked "very young" and an officer suspected her to be underage, a juvenile sex crimes officer, Catherine Bartels, was called to the scene.  Bartels took Amy to the CAC for an interview

_____

[2] A police officer testified that sometimes prostitutes call each other "wives."

3

and evaluation. Amy initially gave the officers her sister's name but later acknowledged her real identity and discussed her sexual activity.

Appellant was charged with sexual assault and compelling prostitution. A jury found him guilty on both counts and assessed punishment at seven years' confinement for sexual assault and twenty-three years' confinement for compelling prostitution. The trial court ordered the compelling prostitution sentence to run consecutively after the sexual assault sentence.

## II. EXCLUSION OF FACEBOOK EVIDENCE

In his second issue,[3] appellant contends the trial court abused its discretion during the guilt and punishment phases of his trial by excluding evidence consisting of Amy's posts on Facebook and related testimony. The trial court excluded twenty-four pages from Amy's Facebook page. The posts were from September 2012 through the date of trial, but Amy testified outside the jury's presence that the posts were similar to her posts from the time when she met appellant. Appellant contends the images and comments show Amy to be a "sexualized teenager" because she posted photos of herself "in various states of undress"[4] and proclaimed in one post, "I wanna have sex now ☺ horny asFFFFF." Appellant also contends the posts show Amy's "experiments with sexuality" and preoccupation with money.[5]

---

[3] We address appellant's issues in a different order than presented in his brief because of the relief sought for each issue.

[4] One photo shows Amy wearing what appears to be a bra or bathing suit top. Other photos show Amy's midriff.

[5] Two photos show a number of twenty-dollar bills spread out. Other posts show Amy posing with and kissing a person who appears to be female with a comment, "I got her back she got my front she my king queen . . . ♥" Another photo is of Amy with the comment, "Fav pic Rate Tbh && @__Trulesbian IG." The fictitious name Amy used for her account included the middle name "SoHomo."

4

The State contends that the evidence was irrelevant during both phases of the trial. After reviewing general standards for relevancy, we address the admissibility of the Facebook evidence in each phase separately.

## A.     Relevancy Standards

We review a trial court's ruling to exclude evidence under an abuse-of-discretion standard. *Resendiz v. State*, 112 S.W.3d 541, 544 (Tex. Crim. App. 2003). We will not reverse the trial court's ruling unless it falls outsize the zone of reasonable disagreement. *Id.*

"Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing Tex. R. Evid. 402). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401 (1998, repealed 2015). This definition is "necessarily a broad one." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Even "marginally probative" evidence should be admitted if "it has any tendency at all, even potentially, to make a fact of consequence more or less likely." *Fuller v. State*, 829 S.W.2d 191, 198 (Tex. Crim. App. 1992).

To determine whether evidence is relevant in a particular case, courts must "examine the purpose for which the evidence is being introduced." *Layton*, 280 S.W.3d at 240. There must be a "direct or logical connection between the actual evidence and the proposition sought to be proved." *Id.* We may reverse a trial court's ruling on relevancy only when there is no room for disagreement that in common experience a particular inference is available. *See Montgomery*, 810 S.W.2d at 391.

5

## B.    Guilt Phase

Appellant argues the evidence was relevant during the guilt phase of the trial because (1) "[e]vidence of [Amy]'s sexuality undercut the State's claim that she was a hapless victim that was compelled into prostitution and is therefore probative of the defense's claim of fabrication"; and (2) the evidence "diminishes [Amy]'s credibility and is likely to create a reasonable doubt in the jury's mind that Mr. Miles sexually assaulted [Amy]." We disagree.

The trial court reasonably could have concluded that the Facebook evidence did not prove Amy's "sexuality" or any type of propensity to engage in prostitution. Further, even if the evidence related to "sexuality," the trial court reasonably could have concluded the evidence did not make it less likely that appellant compelled her to prostitution. Compelling prostitution of a minor requires the defendant to cause "by any means" a child to commit prostitution; the compulsion need not be "by force, threat, or fraud." *See* Tex. Penal Code Ann. § 43.05(a); *see also Waggoner v. State*, 897 S.W.2d 510, 512 (Tex. App.—Austin 1995, no pet.) (sufficient evidence by merely providing the opportunity for a child to engage in prostitution). To the extent reasonable people could disagree about whether Amy's Facebook posts directly and logically informed the issue of whether she fabricated events or engaged in prostitution without any assistance from appellant, we must still defer to the trial court's ruling under the abuse-of-discretion standard. *See Montgomery*, 810 S.W.2d at 391.

We also cannot conclude that the trial court abused its discretion by ruling that the Facebook evidence would not have diminished Amy's credibility with respect to the sexual assault. Appellant has not demonstrated how the Facebook evidence would have diminished Amy's credibility regarding the sexual assault, and we do not see any direct or logical connection. Further, even if the evidence

showed Amy's "sexuality" or desire for a sexual encounter, the evidence would not have had any tendency to prove or disprove a fact of consequence related to the sexual assault. *See* Tex. Penal Code Ann. § 22.011(a)(2)(A) (sexual assault requires that the defendant intentionally or knowingly cause the penetration of the sexual organ of a child by any means).[6]

## C. Punishment Phase

Appellant argues that during the punishment phase, "the jurors were unable to properly calculate Mr. Miles's culpability without viewing the Facebook exhibit and without hearing the fruits of the cross-examination the exhibit would engender." Appellant argues that the trial court's "failure to permit the defense to cross-examine [Amy] using her Facebook photos and comments additionally prevented the defense from arguing that the jurors should not have assigned to Mr. Miles complete culpability for [Amy]'s alleged acts of prostitution when determining Mr. Miles's punishment." At trial, however, after both sides had rested during the punishment phase, appellant asked the court to reopen the evidence as follows:

> Judge, we'd request permission to reopen and add into evidence Defendant's Exhibit No. 1, which is the same Facebook photos of the complainant and basically we're asking out of sort of reciprocity. The defense — the prosecution has been able to put in Facebook of the defendant and we would ask that, likewise, the complainant's Facebook images be considered in evidence as well.

---

[6] The parties do not address Rule 412 of the Texas Rules of Evidence, but to the extent the Facebook evidence showed a reputation for past sexual behavior, it would have been inadmissible. *See* Tex. R. Evid. 412(a) (1998, repealed 2015). Similarly, to the extent the Facebook evidence constituted evidence of specific instances of past sexual behavior, appellant has never argued that one of the listed exceptions to general inadmissibility would apply in this case. *See* Tex. R. Evid. 412(b).

Neither the State nor appellant called Amy to testify during punishment. The State objected to the relevance of the Facebook exhibit, and the trial court sustained the objection.[7]

We hold that appellant failed to preserve error.[8] To preserve error, an appellant must have "'stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of the complaint.'" *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (alteration in original) (quoting Tex. R. App. P. 33.1(a)(1)). "So it is not enough to tell the judge that evidence is admissible." *Id.* "The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Id.* Further, the complaint to the trial court must comport with the complaint on appeal, or else no error is preserved. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *see also Reyna*, 168 S.W.3d at 177 ("The issue, we said, 'is not whether the appealing party is the State or the defendant or whether the trial court's ruling is legally 'correct' in every sense, but whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal.'" (quoting *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002))).

At trial, appellant asked the court to reopen the case and admit the Facebook exhibit "out of sort of reciprocity." Appellant did not argue that the evidence was relevant to appellant's culpability, nor did appellant ask the trial court to allow

---

[7] Also, appellant objected during the State's closing argument and again "offer[ed] Defendant's Exhibit No. 1, the Facebook images" into evidence. Appellant gave no rationale for admission. Although the trial court overruled appellant's objection, it did not rule on appellant's request to offer the Facebook evidence at this time.

[8] The State did not raise error preservation in its brief on appeal, but the preservation of error is "a systemic requirement that a first-level appellate court should ordinarily review on its own motion." *E.g.*, *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (quotation omitted).

8

Amy to testify. Accordingly, appellant's complaints on appeal about the relevancy of the Facebook exhibit to his culpability and the relevancy of Amy's testimony on the subject were not preserved for appellate review.[9]

Appellant's second issue is overruled.

### III.   ADMISSION OF EXPERT TESTIMONY

In his third issue, appellant contends that a "great volume of expert witness testimony in this case was irrelevant and unrelated to [appellant]'s case and bombarded the jury with prejudicial 'background' information which resulted in an unfair trial." The State contends that appellant has waived error by inadequate briefing (by not citing to the record) and has failed to preserve error for most of the expert testimony. The State also contends the evidence was relevant.

First, we address the State's waiver argument. Then, we identify the evidence for which appellant objected and preserved error. Finally, we address the relevancy of that evidence under an abuse-of-discretion standard of review.

### A.   No Briefing Waiver

An appellant's failure to include citations to the record in the appellant's brief may result in waiver of error on appeal. *Lacaze v. State*, 346 S.W.3d 113, 119 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also* Tex. R. App. P.

---

[9] We note that appellant has not argued on appeal that the trial court abused its discretion by refusing to reopen the case, rather than by merely excluding relevant evidence. Under Article 36.02 of the Code of Criminal Procedure, "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is *necessary to a due administration of justice*." Tex. Code Crim. Proc. Ann. art. 36.02 (emphasis added). This statute has been applied to the punishment phase of a trial. *See Rogers v. State*, 774 S.W.2d 247, 262–63 (Tex. Crim. App. 1989), *overruled on other grounds by Peek v. State*, 106 S.W.3d 72 (Tex. Crim. App. 2003). For reopening of the case to be necessary to a due administration of justice, new evidence must be "more than just relevant—it must actually make a difference in the case." *Peek*, 106 S.W.3d at 79. Thus, a trial court does not abuse its discretion by refusing to reopen the case unless the evidence "would materially change the case in the proponent's favor." *Id.*

38.1(i) (argument must contain appropriate citations to the record). The briefing rules should be construed liberally and are "meant to acquaint the court with the issues in a case and present argument that will enable the court to decide the case." Tex. R. App. P. 38.9

Here, appellant complains about the admission of testimony from three witnesses, and appellant references relatively short spans of pages—eleven pages or less—when paraphrasing their testimony. In his reply brief, appellant further narrows his citations to particular pages within the spans provided in his original brief. We hold that in the context of this case appellant's briefing is sufficient to acquaint the court with the issues and enable the court to decide them. Appellant has not waived his entire issue by inadequate briefing.

## B.      Preservation of Error

An appellant must preserve error in the trial court based on the erroneous admission of evidence by making a specific and timely objection and obtaining a ruling from the trial court. *Lacaze*, 346 S.W.3d at 119; *see also* Tex. R. App. P. 33.1(a). An appellant must object each time evidence is offered unless the appellant receives a running objection or requests a hearing outside the presence of the jury. *Lacaze*, 346 S.W.3d at 119 (citing *Dreyer v. State*, 309 S.W.3d 751, 754 (Tex. App.—Houston [14th Dist.] 2010, no pet.)).

Appellant failed to object to most of the evidence he now complains about on appeal. But appellant contends he preserved error regarding all of the complained-of expert testimony because he obtained a running objection to the State's opening argument, and "the trial court gave the State the 'green light' to put on expert testimony." We disagree with appellant's contention and with his characterization of what transpired during opening statements. The following exchange occurred during the State's opening argument:

10

[The State]:  You're going to hear from Officer Bartels that the game is what's called prostitution but that the way it operates is that young women are put out on streets —

[Defense Counsel]:  Judge, we object.  We ask for a running objection to any commentary that doesn't apply specifically to this defendant.

The Court:  Can y'all come up, please?

(At the bench, on the record)

The Court:  Are you going to offer her up as an expert?  Is that where this is coming from?

[The State]:  Yeah, she's an expert.

The Court:  Okay.  All right. Your objection's overruled.  I'll give you a running objection.

[Defense Counsel]:  May I have a running objection?

The Court:  Of course, of course.

In context, appellant's "running objection" was to the State's argument, not to the admission of evidence.  The record does not show that the trial court understood appellant to be objecting to all expert testimony at this time or that appellant was requesting a running objection to testimony that might be offered thereafter.  Nor would that be a reasonable interpretation of the exchange.  Indeed, appellant merely asked for "a running objection to any commentary."   If appellant desired a running objection that extended beyond the opening statement, he needed to ask for it.  *See, e.g.*, *Pena*, 285 S.W.3d at 464 (noting that an appellant must let the trial judge know what the appellant wants).  Appellant relies on *Graham v. State*, in which the Court of Criminal Appeals held that once the defendant obtained an adverse ruling, the defendant did not need to object to a rephrased question immediately following the trial court's ruling.  *See* 710 S.W.2d 588, 591 (Tex. Crim. App. 1986) (holding that it was clear the trial court gave the State "the green light" to put on the complained-of evidence).  *Graham* is inapposite.

Nonetheless, appellant contends he objected to specific evidence during trial. Many of his objections were sustained. However, we have reviewed the record and identified several overruled objections related to appellant's arguments on appeal. We address each of those objections in turn. *See Lacaze*, 346 S.W.3d at 120 (reviewing the admission of testimony that was both (1) referenced in the appellant's brief and (2) objected to at trial).[10]

## C.    Catherine Bartels

Officer Catherine Bartels specialized in law enforcement of juvenile sex crimes. She testified as follows:

> [The State]:  Okay. In general, regardless of whether it's a gorilla pimp or a finesse pimp, is there another term for finesse pimp as well or mack?
>
> [Defense Counsel]:  Objection, Judge, relevance.
>
> The Court:  Overruled.
>
> [The State]:  Have you heard the phrase "mack"? Is that another word that's also used?
>
> [Bartels]:  It's been used here and there.

Appellant contends that the elicitation of this terminology (i.e., "mack") was irrelevant and was never used during trial. Indeed, no other evidence or testimony referenced the word "mack."[11]

Assuming without deciding that this evidence was irrelevant, we conclude that its admission at trial did not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b) (non-constitutional error must be disregarded if it does not affect substantial rights). A defendant's "substantial rights are not affected by the

---

[10] We limit our review to those overruled objections within the spans of pages appellant cites in the "Relevant Facts" section of his third appellate issue and those cited in his reply brief.

[11] During opening arguments, the State briefly mentioned that "mack" was another term for a "finesse pimp."

12

erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quotation omitted). After reviewing the entire record, we conclude that the brief reference to the word "mack" was not prejudicial to appellant and did not influence the jury at all. Any error in the admission of this evidence was harmless.

## D.    Danielle Madera

Dr. Danielle Madera was a staff psychologist at the CAC. The trial court overruled two relevancy objections to her testimony that appellant now complains about on appeal. The first exchange occurred as follows:

> [The State]: Okay. But you're being called on, in your expertise in these areas, to help maybe explain some things to us?
>
> [Madera]: Yeah, to talk about the kids we see here. We've had about 30 girls that have come through the CAC now for domestic human trafficking as well —
>
> [Defense Counsel]: Objection, Your Honor, relevance.
>
> The Court: Overruled.
>
> [Madera]: — as well as the literature —
>
> [Defense Counsel]: Objection, Your Honor, narrative.
>
> The Court: Overruled.
>
> [Madera]: — as well as the literature that's in the field.

Appellant contends that the number of domestic human-trafficking victims at the CAC is irrelevant. In context, however, the State elicited this testimony to show that Madera was qualified to opine on issues related to compelling prostitution of minors. For example, Madera later testified that it is common for children at the CAC to initially lie, as Amy did.

13

For any of Madera's subsequent opinions to be admissible, the State had the burden to establish Madera was qualified to render her opinions. *See Vela v. State*, 209 S.W.3d 128, 132 (Tex. Crim. App. 2006). In particular, the State had to show that Madera's background was "tailored to the specific area of expertise" for which Madera would testify. *See id.* at 133. Thus, testimony showing that Madera had experience with other child sex-offense victims at the CAC was relevant to her ability to render opinions about child sex-offense victims. The trial court did not abuse its discretion by overruling appellant's relevancy objection.

Next, appellant objected based on relevancy as follows:

[The State]: So, to continue, and you say based on the literature and what you know, a big factor is generally a child has been sexually abused already, correct?

[Madera]: Yes.

[The State]: And why is that potentially important if they have? And not all of them have necessarily, correct?

[Madera]: Correct.

[The State]: Okay. But why is that important?

[Defense Counsel]: Objection, Your Honor, relevance.

The Court: Overruled.

[Madera]: It's important because that initial child abuse put that child in a vulnerable position to later be abused or victimized by somebody else and they oftentimes are not supported in their family. They may not have any sort of family support, so somebody comes along and offers them something better, a better life, it looks more appealing to a child —

[Defense Counsel]: Objection, Your Honor, narrative.

The Court: Overruled.

[The State]: Okay. You can continue.

[Madera]: I think that was the end.

14

Madera previously had testified that children compelled into prostitution "are not just at home, bored, looking for some fast money or something to do with their time." Madera had testified, without a relevancy objection, that at least ninety percent have been sexually abused previously.

Appellant contends that Madera's testimony about the vulnerability of sexually abused children is irrelevant because there is no testimony that Amy had been sexually abused before her interactions with appellant. Assuming Madera's testimony on this subject was irrelevant,[12] we conclude that the error did not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). Because there was no evidence of Amy's prior sexual abuse, Amy arguably did not fit the profile that the State attempted to construct through Madera's testimony about human-trafficking victims. Madera's testimony about the vulnerability of those who had been sexually abused would not have had much, if any, effect on the jury. *See Motilla*, 78 S.W.3d at 355. In fact, the lack of evidence of Amy's prior sexual abuse, coupled with Madera's testimony that the vast majority of child human-trafficking victims had been sexually abused, would have weighed in appellant's favor—that is, Amy did not necessarily fit the profile of the vulnerable child victim that was the subject of Madera's testimony.

Any error in the admission of Madera's testimony was harmless.

### E.     Marcella Donaruma

Dr. Marcella Donaruma was the medical doctor at the CAC who interviewed and examined Amy. Donaruma testified about how Amy initially did not want to

---

[12] *See Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996) (noting that expert testimony must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute; "Expert testimony that does not relate to a fact in issue is not helpful."), *discussed in Vela*, 209 S.W.3d at 133.

15

identify herself or say what grade she was in, but then Amy started to "open up" and answer Donaruma's questions. The following testimony occurred:

> [The State]: Do you have children that sometimes just won't answer anything?
>
> [Donaruma]: Yes, I do.
>
> [Defense Counsel]: Object, Your Honor, relevance.
>
> The Court: Overruled.
>
> [Donaruma]: Yes, I do.

Viewed in context of Donaruma's immediately preceding testimony about Amy initially not wanting to answer questions, the trial court would not have abused its discretion in concluding this evidence to be relevant. *See Shaw v. State*, 329 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (holding that evidence was relevant when the witness testified about how the child complainant's actions were "appropriate" because child sex-abuse victims often cry out to multiple people; generally in a child sex-assault case, expert "testimony is relevant if the witness explains that certain behavior is consistent with sexual abuse and the child in question has exhibited such behavior").

Having reviewed the alleged inadmissible evidence that drew timely and specific objections from appellant at trial, we hold that there is no reversible error. Appellant's third issue is overruled.

## IV. CUMULATION ORDER

In his first issue, appellant contends the trial court erred by cumulating (or "stacking") appellant's sentences and ordering him to serve the sentences consecutively. He contends the cumulation statute does not authorize a trial court to stack a sentence for compelling prostitution with a sentence for sexual assault of a child when both are imposed during a single criminal action. We agree.

16

## A. Standard of Review

We generally review a trial court's decision to stack a defendant's sentences for an abuse of discretion. *Mireles v. State*, 444 S.W.3d 679, 680 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). When the law authorizes the imposition of cumulative sentences, the trial court has absolute discretion to cumulate the sentences. *Tran v. State*, 221 S.W.3d 79, 90 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). But a trial court abuses its discretion if it fails to apply the law correctly. *Mireles*, 444 S.W.3d at 680. The parties agree that the issue of whether the trial court could stack appellant's sentences is one of statutory interpretation, which we review de novo. *See, e.g.*, *Nguyen v. State*, 359 S.W.3d 636, 641–42 (Tex. Crim. App. 2012) (applying de novo review to the cumulation statute).

## B. General Principles of Statutory Construction

In construing a statute, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation as reflected in the words of the statute. *See Price v. State*, 434 S.W.3d 601, 605 (Tex. Crim. App. 2014). In doing so, we focus our attention on the literal text of the statute. *Nguyen*, 359 S.W.3d at 641. We presume that the Legislature intended for the entire statutory scheme to be effective. *Id.*; *see also* Tex. Gov't Code Ann. § 311.021(2).[13] Thus, we are to avoid a construction of a statute that would render a provision meaningless, nugatory, or mere surplusage. *See Ludwig v. State*, 931 S.W.2d 239, 242 n.9 (Tex. Crim. App. 1996); *Cook v. State*, 902 S.W.2d 471, 478 (Tex. Crim. App. 1995); *see also State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006). When statutory language is clear and unambiguous, we give effect to its plain meaning unless to do so would lead to absurd consequences that the Legislature could not possibly have

---

[13] Generally, we apply the sections of the Code Construction Act listed in Section 1.05(b) of the Penal Code. *See* Tex. Penal Code Ann. § 1.05(b).

intended.  *Price*, 434 S.W.3d at 605; *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

## C.      The Cumulation Statute

Generally, when a defendant is sentenced for multiple convictions obtained during a single criminal action, the trial court must order the sentences to run concurrently.  *See* Tex. Penal Code Ann. § 3.03(a) (West Supp. 2014).  Section 3.03(b) is an exception to the general rule and authorizes a trial court to stack sentences for specified offenses:

> (b) If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of:
>
> > (1) an offense:
> >
> > > (A) under Section 49.07 [intoxication assault] or 49.08 [intoxication manslaughter], regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections; or
> > >
> > > (B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A), regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of both sections;
> >
> > (2) an offense:
> >
> > > (A) under Section 33.021 [online solicitation of a minor] or an offense under Section 21.02 [continuous sexual abuse of young child or children], 21.11 [indecency with a child], 22.011 [sexual assault], 22.021 [aggravated sexual assault], 25.02 [prohibited sexual conduct], or 43.25 [sexual performance by a child] committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is convicted of violations of the same section

more than once or is convicted of violations of more than one section; or

(B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A) committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of more than one section;

(3) an offense:

(A) under Section 21.15 [improper photography or visual recording] or 43.26 [possession or promotion of child pornography], regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections; or

(B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A), regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of both sections;

(4) an offense for which the judgment in the case contains an affirmative finding under Article 42.0197, Code of Criminal Procedure [gang-related conduct];

(5) an offense:

(A) under Section 20A.02 [trafficking of persons] or 43.05 [compelling prostitution], regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections; or

(B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A), regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of both sections; or

(6) an offense:

> (A) under Section 22.04(a)(1) or (2) or Section 22.04(a-1)(1) or (2) [injury to a child, elderly individual, or disabled individual] that is punishable as a felony of the first degree, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section; or

> (B) or which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A) and punishable as described by that paragraph, regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of more than one section.

Tex. Pen. Code Ann. § 3.03(b).

## D. Parties' Arguments

Appellant and the State each propose different interpretations of the statute.[14] Appellant contends that the only reasonable interpretation of the statute is that offenses listed in each subsection (b)(1), (2), (3), (5), and (6) cannot be stacked with offenses listed in other subsections (b)(1), (2), (3), (5), and (6). In other words, two offenses listed in (b)(2) could be stacked together, but one offense from (b)(2) could not be stacked with one offense from (b)(5), as the trial court did here for sexual assault and compelling prostitution.

The State contends that the "or" appearing after subsection (b)(5)(B) means that all of the offenses listed in subsection (b) may be stacked together. Appellant

---

[14] Both parties contend that the statute is unambiguous; thus, we should not resort to extra-textual materials for interpretation. *See, e.g.*, *Boykin*, 818 S.W.2d at 785–86 ("If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then *and only then*, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra*textual factors as executive or administrative interpretations of the statute or legislative history.").

counters that "or" can be inclusive or exclusive, and it is not dispositive of the Legislature's intent. Moreover, appellant argues the State's interpretation renders parts of the statute meaningless.

The State also contends that appellant's interpretation does not produce a just and reasonable result. *See* Tex. Gov't Code Ann. § 311.021(3). The State argues that appellant's interpretation is contrary to the Legislature's intent of allowing the State to prosecute a defendant for multiple sex-related offenses against a child in a single proceeding.

## E. Textual Analysis

Based on the plain meaning of the text of the statute, we hold that appellant's interpretation of the statute is the only reasonable interpretation because the State's interpretation would render portions of the statute meaningless and would not give effect to the entire statute.

Subsection (b)(5)(A) states that sentences may be stacked if each sentence is for an offense of human trafficking or compelling prostitution, "regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of *both sections*." Tex. Penal Code Ann. § 3.03(b)(5)(A) (emphasis added). If all offenses listed in subsection (b) could be stacked, the references to "both sections" in subsections (b)(1), (3), and (5) would be meaningless and irreconcilable. Subsections (b)(1), (3), and (5) each list only two offenses, so the phrase "both sections" necessarily indicates that the Legislature intended the stacking of only those two offenses together.

Further, subsections (b)(1), (2), (3), (5), and (6) each include a paragraph (B) that refers to convictions obtained by plea agreements for which the defendant was charged with "more than one offense *listed in Paragraph (A)*." *Id.*

21

§ 3.03(b)(1)(B), (2)(B), (3)(B), (5)(B), (6)(B) (emphasis added). The Legislature's use of this phrase in each paragraph (B) suggests that the Legislature intended only for offenses listed in the companion paragraph (A) to be stacked together. *See* Tex. Penal Code Ann. § 1.05(c)(2) ("In this code . . . a reference to a . . . paragraph or other numbered or lettered unit without further identification is a reference to a unit of the next-larger unit of this code in which the reference appears.").[15]

The State's reliance on the word "or" appearing after subsection (b)(5)(B) is not dispositive because "or" can be interpreted in two ways. It can be used as an "inclusive" function word to express "an alternative between different or unlike things." Webster's Third New International Dictionary 1585 (1993); *see* Black's Law Dictionary 1095 (6th ed. 1990); *see also Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*, 393 S.W.3d 417, 427 (Tex. App.—Austin 2012, pet. denied) ("[T]he word 'or' does not automatically create a choice between two mutually exclusive options."). But "or" can also be an "exclusive" word to express a "choice between alternative things," whether two or more. Webster's Third New International Dictionary, *supra*, at 1585; *see* Black's Law Dictionary, *supra*, at 1095. *See generally Lake v. Woodcreek Homeowners Ass'n*, 243 P.3d 1283, 1289 (Wash. 2010) (discussing the difference between both uses). "The Legislature's use of the disjunctive term 'or' typically signifies a separation between two distinct ideas." *Heritage*, 393 S.W.3d at 427 ("The use of the disjunctive usually indicates alternatives and requires those alternatives to be treated separately . . . .").

---

[15] We do not think it could be argued that convictions from plea agreements, i.e., under paragraph (B), should be treated differently than convictions after a trial, i.e., under paragraph (A), given the intent of the Legislature to stack sentences for convictions for the specified offenses, regardless of how the convictions are obtained. *See Nguyen*, 359 S.W.3d at 645 (discussing legislative history and holding that sentences for guilty pleas to offenses not listed in subsection (b) could not be stacked even though the defendant had initially been charged with offenses listed in subsection (b)).

To determine which meaning was intended, "Texas courts consider the use of the word 'or' against the backdrop of the entire statute." *Id.* Looking to the entire statute, the exclusive use of the word "or" at the end of subsection (b)(5)(B) is the only reasonable interpretation because the inclusive use of "or" would render meaningless parts of the statute and not give effect to the entire statute, as discussed above.

We note that the Legislature amended subsection (b) in piecemeal fashion to add specific offenses and categories of offenses: first, intoxication manslaughter, *see* Act of May 25, 1995, 74th Leg., R.S., ch. 596, § 1, 1995 Tex. Gen. Laws 3435, 3435; second, most of the sexual offenses against children in (b)(2), *see* Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 2, 1997 Tex. Gen. Laws 2250, 2251–52; third, intoxication assault for subsection (b)(1), and improper photography and child pornography in (b)(3), *see* Act of May 23, 2005, 79th Leg., R.S., ch. 527, § 1, 2005 Tex. Gen. Laws 1429, 1429–30; fourth, online solicitation of a minor in (b)(2), *see* Act of May 27, 2007, 88th Leg., R.S., ch. 1291, § 6, 2007 Tex. Gen. Laws 4344, 4349; fifth, the gang-related affirmative finding in (b)(4), *see* Act of May 31, 2009, 81st Leg., R.S., ch. 1130, § 21, 2009 Tex. Gen. Laws 3119, 3126–27; sixth, human trafficking and compelling prostitution in (b)(5), *see* Act of April 7, 2011, 82nd Leg., R.S., ch. 1, § 6.01, 2011 Tex. Sess. Law Serv. 1, 14–15 (West); and finally, injury to a child, elderly, or disabled person in (b)(6), *see* Act of May 17, 2013, 83rd Leg., R.S., ch. 228, § 1, 2013 Tex. Sess. Law Serv. 968, 968–69 (West).

Looking solely to the text of each amendment, we discern that the Legislature considered each category separately and would not have intended subsection (b) to authorize stacking among the various categories of offenses. One reason for this understanding is that the Legislature added the various categories of

offenses with corresponding paragraphs (A) and (B). And for some amendments, the Legislature created new subsections (b)(2) through (b)(6), but for other amendments, the Legislature added offenses to preexisting subsections. For example, the Legislature added child pornography to a new subsection (b)(3) at the same time the Legislature added intoxication assault to an existing subsection (b)(1). We presume the Legislature did not act arbitrarily in doing so. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011) (reviewing constitutionality of a statute, "[i]t is to be presumed that the Legislature has not acted unreasonably or arbitrarily").

The only logical reason for doing so—placing one offense in a preexisting subsection and another offense in a new subsection—is that the Legislature did not intend for intoxication assault to be stacked with child pornography.[16] The same can be said for compelling prostitution. Had the Legislature intended for compelling prostitution to be included in one of the offenses against children enumerated in subsection (b)(2) for which cumulation is authorized, the Legislature could have added it to subsection (b)(2). Instead, the Legislature grouped compelling prostitution (against adults and children alike) with human trafficking in a new subsection (b)(5), declaring that stacking was authorized for "both sections"—in the plea context, for "both sections" listed in paragraph (A). "Both sections" unambiguously refers only to human trafficking and compelling prostitution.

---

[16] Similarly, the online solicitation of a minor offense was added to subsection (b)(2), although it just as easily could have been added to (b)(3), or a new subsection could have been created.

24

**F.      Just and Reasonable Result and Purpose of Statute**

The State suggests that a prohibition on stacking a (b)(2) offense with a (b)(5) offense would not yield a just and reasonable result.  *See* Tex. Gov't Code Ann. § 311.021(3).   The State posits a hypothetical whereby appellant was convicted of two counts of sexual assault and sentenced to twenty years for each offense, cumulated, compared to a hypothetical whereby appellant was convicted of one count of sexual assault and one count of compelling prostitution and sentenced to twenty years each, which could not be cumulated under our interpretation of the statute.  The State contends the latter situation would not be just and reasonable because it is the more egregious scenario.

The State's hypothetical ignores the actual sentences in this case, which were for seven years' confinement on the sexual assault conviction and twenty-three years' confinement on the compelling prostitution conviction.  So, the jury obviously viewed the compelling prostitution charge as more egregious.  Had appellant received only seven years each on two stacked sentences for sexual assault, he would have been sentenced to less time than he actually received in this case even though sexual assault cannot be stacked with compelling prostitution.  In short, the State's hypothetical is untethered to the facts of this case and does not lead to a conclusion that our interpretation of the statute will cause an unjust or unreasonable result.

Finally, the State contends that the purpose of the statute is to allow the State to prosecute a defendant for multiple sex-related offenses against a child in a single proceeding so that the child complainant does not have to suffer through multiple trials.  This ostensible purpose is derived from extra-textual legislative history of the 1997 omnibus bill that added Section 3.03(b)(2) while simultaneously adding Section 3.04(c) to remove a defendant's previously unqualified right to sever

25

Section 3.03(b)(2) offenses. *See* House Research Organization, Bill Analysis for House Criminal Jurisprudence Committee, C.S.S.B. 381 (May 20, 1997) (noting that the bill would "restrict defendants' right to multiple trials for serious sex offenses committed against children so that child victims cannot be forced to undergo multiple trials"; claiming that defendants "sometimes use their right to have multiple offenses tried separately as a tactic to traumatize victims by putting them through multiple trials"); *see also* Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 3, 1997 Tex. Gen. Laws 2250, 2252; *Bonilla v. State*, 452 S.W.3d 811, 831 (Tex. Crim. App. 2014) (Price, J., dissenting).[17]

The 2005 bill adding intoxication assault, child pornography, and improper photography offenses to Section 3.03(b) further narrowed a defendant's right to sever offenses by making Section 3.04(c) applicable to all offenses "described by Section 3.03(b)." *See* Act of May 23, 2005, 79th Leg., R.S., ch. 527, § 2, 2005 Tex. Gen. Laws 1429, 1430 (codified at Tex. Penal Code Ann. § 3.04(c)). Our holding today, however, is limited to the trial court's authority to stack sentences, not to the State's ability to consolidate or join offenses so as to prevent the necessity for multiple trials. Appellant had no unqualified right to sever in this case and could not have forced the child complainant to endure multiple trials. The State retains that authority although the consequence of joining multiple offenses not listed in the same subsection (b)(1), (2), (3), (5), or (6) will be concurrent sentences.[18]

---

[17] At the time, Section 3.04(c) stated that the right to severance did not apply to a prosecution for offenses "described by Section 3.03(b)(2)." *See* Act of May 31, 1997, 75th Leg., R.S., ch. 667, § 3, 1997 Tex. Gen. Laws 2250, 2252.

[18] We note that in appellant's case, the State had evidence appellant committed up to eight counts of compelling prostitution, which could have been stacked together, and two counts of sexual assault, which could have been stacked together.

Even if the purpose of Section 3.04(c) concerning severance is indivisible from the purpose of Section 3.03(b) concerning cumulation, the Legislature must be understood to mean what it has expressed in the statutory text, and we cannot add to or subtract from the statute, particularly by reference to extra-textual legislative history. *See Parfait v. State*, 120 S.W.3d 348, 350–51 (Tex. Crim. App. 2003) (holding that sentences for attempts of subsection (b)(2) offenses cannot be stacked despite the statute's purpose of protecting innocent children from rapists); *see also Boykin*, 818 S.W.2d at 785–86. When, as here, the plain language of the statute is not ambiguous and prescribes a result that is not absurd, we must apply the statute as written. *See, e.g.*, *Dobbs v. State*, 434 S.W.3d 166, 173 (Tex. Crim. App. 2014).

## G.      Conclusion Regarding Cumulation

The unambiguous language of Section 3.03(b) provides that a sentence for compelling prostitution may not be stacked with a sentence for sexual assault of a child when the offenses arise out of the same criminal episode and are prosecuted in a single criminal action. The trial court erred by cumulating appellant's sentences.

Appellant's first issue is sustained. Accordingly, we will reform the judgment to delete the cumulation order. *See Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008).

## V.      VERBIAGE IN THE JUDGMENT

In his fourth issue, appellant requests this court to reform his judgments to reflect the statutory names of the offenses because the judgements contain unnecessary verbiage. The judgments identify the offenses for which he was convicted as "sexual assault of a child 14–17 years of age" and "compelling

27

prostitution less than 18 years of age." Appellant contends the judgments should be reformed to reflect only the titles of the offenses identified in the Penal Code, respectively "sexual assault" and "compelling prostitution." We disagree with appellant's contention that reformation is required.

Texas judgments must reflect the "offense or offenses for which the defendant was convicted." Tex. Code Crim. Proc. Ann. art. 42.01, § 1(13). Appellant relies on *Ex parte Mattox*, 129 S.W.2d 641 (Tex. Crim. App. 1939), to suggest that it is a clerical error for a judgment to reflect unnecessary verbiage. Mattox had been charged with one count of "robbery by using and exhibiting a firearm," and two counts of "robbery by assault and violence." *Id.* at 641. Mattox waived a jury and pleaded guilty to the two counts of robbery by assault and violence, and the court sentenced him to fifteen years' confinement, *id.* at 642, but the judgment incorrectly identified the offense to which he pleaded guilty as robbery "by use of firearms," *see id.* at 642, 645 (op. on reh'g). The distinction was important because at the time, robbery by assault or violence carried a punishment of five years to life while robbery by use of a firearm was a capital offense for which a defendant could not waive a jury. *Id.* at 643. The Court of Criminal Appeals explained that it was merely a clerical error for the clerk to include in the judgment "by use of firearms" after the offense of "robbery." *See id.* at 645. A nunc pro tunc judgment corrected the earlier judgment by removing the "by use of firearms" phrase. *See id.* The nunc pro tunc judgment was necessary for the judgment to "speak the truth" of what actually happened at trial. *Id.*; *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (appellate court has authority to reform a judgment to make the record "speak the truth").

*Ex parte Mattox* did not hold, as appellant suggests, that it was error by itself to include "by use of firearms" in the title of the offense in the judgment; it was

28

error in that case because Mattox had not pleaded guilty to that distinct offense. At the time, the Penal Code included only one offense of "Robbery," wherein the different categories of robbery were distinguished under the same Article. *See* Tex. Penal Code art. 1408 (1925, repealed).[19]   By the court's distinguishing between "robbery" and "robbery by use of firearms," the court acknowledged that a greater description of the offense may be appropriate compared to the title of the offense identified in the Penal Code, so the judgment may "speak the truth" of the offense committed. *See Davis v. State*, 501 S.W.2d 629, 633 (Tex. Crim. App. 1973) (noting that the "better practice" for naming offenses in judgments would be to use the term "burglary with intent to commit theft" or "burglary with intent to commit rape" or another "accurate description of the offense," rather than merely "burglary, as charged in the indictment").

In appellant's case, the phrases "of a child 14–17 years of age" and "less than 18 years of age" accurately describe the offenses—sexual assault and compelling prostitution, respectively—for which appellant was convicted. Like the old robbery statute, the sexual assault and compelling prostitution statutes criminalize different types of conduct for which there can be varying defenses and punishments. For example, compelling prostitution is ordinarily a second degree felony, but it is a first degree felony when the complainant is "a child younger than 18 years." Tex. Penal Code Ann. § 43.05. Certain defenses apply to sexual assault when the complainant is "a child 14 years of age or older." *See id.* § 22.011(e).

---

[19] The statute identified "Robbery" as follows: "If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for life, or for a term of not less than five years; and when a firearm or other deadly weapon is used or exhibited in the commission of the offense, the punishment shall be death or by confinement in the penitentiary for any term not less than five years." Tex. Penal Code art. 1408 (1925, repealed)

Thus, we cannot conclude that the trial court erred by including phrases that accurately describe the offenses for which appellant was convicted.

Appellant has cited to no authority that would require a judgment to include only the title of the offense identified in the Penal Code. Similarly, we have found no authority to that effect, and the Code of Criminal Procedure does not require it.

Appellant's fourth issue is overruled.

## VI. CONCLUSION

We have overruled appellant's second, third, and fourth issues, but sustained his first regarding the cumulation order. Accordingly, we modify the trial court's judgment in the compelling prostitution case, Cause No. 14-14-00155-CR (Trial Court Cause No. 1390391), to delete the cumulation order, and we affirm the judgment as modified. We affirm the trial court's judgment in the sexual assault case, Cause No. 14-14-00154-CR (Trial Court Cause No. 1323841).


/s/        Sharon McCally
           Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.

Publish — Tex. R. App. P. 47.2(b).

APPENDIX B –SECTION 3.03

(a) When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently.

(b) If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of:

(1) an offense:

(A) Under Section 49.07 or 49.08, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections; or
(B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A), regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of both sections;

(2) an offense:
(A) under Section 33.021 or an offense under Section 21.02, 21.11, 22.011, 22.021, 25.02, or 43.25 committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section; or
(B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A) committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of more than one section;

(3) an offense:
(A) under Section 21.15 or 43.26, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections; or

27

(B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A), regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of both sections;

(4) an offense for which the judgment in the case contains an affirmative finding under Article 42.0197, Code of Criminal Procedure;

(5) an offense:
(A) under Section 20A.02 or 43.05, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of both sections; or
(B) for which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A), regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of both sections; or

(6) an offense:
(A) under Section 22.04(a)(1) or (2) or Section 22.04(a-1)(1) or (2) that is punishable as a felony of the first degree, regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section; or
(B) or which a plea agreement was reached in a case in which the accused was charged with more than one offense listed in Paragraph (A) and punishable as described by that paragraph, regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of more than one section.

TEX. PEN. CODE ANN. § 3.03 (West Supp. 2014).