**Reversed and Remanded and Majority and Dissenting Opinions filed September 24, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00205-CR

---

## SANTHY INTHALANGSY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 178th District Court
### Harris County, Texas
### Trial Court Cause No. 1471491

---

## M A J O R I T Y   O P I N I O N

In this appeal from a conviction for capital murder, Appellant Santhy Inthalangsy argues that he is entitled to an acquittal because the evidence is insufficient to support the conviction. He further argues in the alternative that, even if the evidence were sufficient, he should still receive a new trial because the trial court abused its discretion by admitting certain evidence. For the reasons below, we reverse the trial court's judgment and remand for a new trial.

## BACKGROUND

A woman nicknamed Cassie was kidnapped twice in a single week. During the first kidnapping, Cassie retained the use of her cellphone, and she texted her landlord saying that she was "being held hostage" because of a "huge deal gone bad." Cassie indicated that she had been trying to facilitate a large transaction between drug dealers, but that someone had stolen the money, which belonged to her captors. Cassie did not identify her captors by name in her text messages, but she identified the street address where they were keeping her. The residence at that street address was occupied by Appellant's girlfriend, Linda.

The captors released Cassie after she arranged to give them her father's boat to compensate them for their loss. Upon her release, Cassie went to her garage apartment, where her landlord immediately evicted her and her boyfriend, Jimmy.

Cassie then followed Jimmy to a house belonging to his friend, Frank, where Jimmy had been working as a mechanic. While on Frank's property, Cassie and Jimmy slept overnight in their separate cars, until Frank discovered them one morning and invited them inside to sleep on the couch.

As Cassie and Jimmy stayed with Frank, Cassie's captors renewed their search for her, apparently due to title problems with the boat. The captors first went to Cassie's garage apartment, where her landlord saw what he believed to be three Asian men going through the belongings that Cassie had left behind. Then they went to the house belonging to Jimmy's parents, where they were identified as two Asian men (Appellant and his associate Amalinh) and one Asian woman (Linda).

The captors were eventually tipped off by a man nicknamed Monk, another drug dealer in the area who knew the individuals involved and who knew about Linda's desire to track down Cassie. Monk called Frank one morning and asked if

2

Frank knew Cassie's whereabouts. When Frank said that Cassie was staying with him, Monk told Frank to not mention their conversation to anyone. Monk then told Linda where she could find Cassie.

Linda gathered Appellant and Amalinh, and together they drove out to Frank's neighborhood, but they could not locate Frank's house. Linda contacted Monk, who lived nearby, and he agreed to show them the way.

Monk drove in his own car and, as he approached Frank's house, he called Frank and told Frank to meet him in his car, where he said that he would provide Frank with some drugs. As instructed, Frank walked outside to Monk's car, which was parked on the street, and he got inside. Linda then pulled into Frank's driveway, as Frank watched from a distance.

Frank saw Appellant and Amalinh exit Linda's vehicle, rummage briefly through her trunk, and then walk towards his house. Shortly after they were inside, Frank heard a loud sound that resembled a gunshot. Then he saw Cassie being escorted out of the house with Appellant and Amalinh on either side of her. Cassie and her captors got into the backseat of Linda's vehicle, with Cassie in the middle, and then Linda drove away.

Frank exited Monk's vehicle after Linda left. When Frank returned to his house, he found Jimmy gasping for air and bleeding from a single gunshot wound to the face. Frank called 911 and Jimmy was rushed to a local hospital, but Jimmy succumbed to his injuries. The next day, Cassie's body was found near an area river, having been shot multiple times.

Appellant was soon charged with Jimmy's capital murder, with the aggravating element being that the murder occurred during the course of Cassie's second kidnapping. Appellant pleaded not guilty, but a jury found otherwise and,

3

because the prosecution did not seek the death penalty, the trial court sentenced him to a mandatory term of life imprisonment without the possibility of parole.

## ANALYSIS

Appellant raises four issues on appeal:

1. the evidence is legally insufficient to support his conviction for capital murder;[1]

2. the trial court abused its discretion by admitting evidence of Cassie's extraneous murder;

3. the trial court abused its discretion by admitting certain hearsay statements; and

4. the trial court abused its discretion by denying Appellant's motion for a continuance.

Beginning with Appellant's first issue, we conclude that his conviction is supported by legally sufficient evidence. With respect to the second issue, we hold the trial court abused its discretion by admitting evidence of Cassie's murder. Because this error affected Appellant's substantial rights, we reverse the trial court's judgment and remand for a new trial. *See, e.g., Veliz v. State*, 474 S.W.3d 354, 367-68 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). We do not reach Appellant's other issues on appeal.

## I.     Sufficiency of the Evidence

In a sufficiency challenge, a reviewing court must determine whether a rational trier of fact could have found the essential elements of an offense beyond a

---

[1] Appellant raises the sufficiency challenge as the final issue in his brief, but we address that issue first because, if meritorious, it would afford him greater relief than his other issues. *See Roberson v. State*, 810 S.W.2d 224, 225 (Tex. Crim. App. 1991) (per curiam) (en banc) (holding that the court of appeals erred by remanding a case on a claim of ineffective assistance of counsel without ever addressing a sufficiency challenge, which could have entitled the defendant to a rendition of judgment).

4

reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The offense here was capital murder, which meant that the jury was required to find the following essential elements: (1) Appellant intentionally murdered Jimmy, and (2) Appellant committed Jimmy's murder in the course of committing Cassie's kidnapping. *See* Tex. Penal Code Ann. § 19.03(a)(2). When deciding whether these elements were proven beyond a reasonable doubt, we consider all of the evidence in the light most favorable to the jury's decision. *See Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015).

For the first element of murder, the prosecution had to prove that Appellant intentionally caused Jimmy's death. *See* Tex. Penal Code Ann. § 19.02(b)(1). There was conclusive evidence that Jimmy died from a single gunshot wound to the face, but there was no conclusive evidence as to who fired the shot that killed him. Nevertheless, the jury could have reasonably found that the shot was fired either by Appellant or his associate Amalinh. The evidence showed that both men entered Frank's house at the same time and that a gunshot was heard shortly thereafter. Even if Amalinh was the actual shooter, Appellant was still charged under the law of parties, and the jury could have reasonably determined that Appellant at least encouraged or aided Amalinh in the commission of Jimmy's murder. *See id*. § 7.02(a)(2) (providing that a person is criminally responsible as a party if the person encourages or aids another in the commission of an offense); *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (holding that the conviction must be upheld if the evidence is legally sufficient on any theory authorized by the jury charge). The jury could have also inferred that the murder was intentional because death is the natural consequence of a gunshot to the face. *See* Tex. Penal Code Ann. § 6.03(a).

For the second element of kidnapping, the prosecution had to prove that Appellant intentionally or knowingly "abducted" Cassie. *See id*. § 20.03(a). The

5

word "abduct" has a statutory definition, meaning "to restrain a person with intent to prevent [her] liberation by secreting or holding [her] in a place where [she] is not likely to be found; or using or threatening to use deadly force." *See id*. § 20.01(2). The word "restrain" also has a statutory definition, meaning "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *See id*. § 20.01(1).

The evidence showed that Cassie was escorted from Frank's house into Linda's car, with Appellant and Amalinh on either side of her. From this evidence, the jury could have reasonably determined that Appellant restrained Cassie without her consent because the escort occurred immediately after Jimmy was shot. *See id*. § 20.01(1)(A) (providing that restraint is "without consent" if it is accomplished by force, intimidation, or deception). Similarly, the jury could have reasonably determined that, during Cassie's restraint, Appellant formed the intent to prevent her liberation by taking her, with the assistance of Linda, to a place where Cassie was not likely to be found and by using deadly force against her. *See Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009).

Appellant responds that the evidence is insufficient to establish a kidnapping because Frank affirmatively testified that Cassie appeared "nonchalant" when she left Frank's house. Appellant also refers to other testimony that neither he nor Amalinh were seen with any weapons, and that they did not touch Cassie as they escorted her from Frank's house to Linda's car. Based on this evidence, Appellant suggests that a rational jury could not make a finding that Cassie was restrained without her consent.

Appellant has failed to view the evidence in the light most favorable to the verdict. There was testimony from Monk, who was also present at the scene, that

6

Cassie looked "like she was fixing to cry." Considering the other evidence that Jimmy had just been shot inside the home where she was staying, the jury could have reasonably concluded that Appellant and Amalinh used force and intimidation to restrain Cassie without her consent, even if they did not actually touch her with their hands.

Appellant contends next that there is insufficient evidence to show that Cassie's kidnapping was intentional. Appellant suggests in his brief that the kidnapping may have just been an "afterthought," but there was an abundance of evidence to the contrary. Intent can be inferred from the circumstances, and there was evidence that Appellant (along with Amalinh and Linda) was searching for Cassie at her garage apartment and at the house belonging to Jimmy's parents. When combined with the other evidence that Cassie had previously been kidnapped earlier in the week by the same parties, the jury could have reasonably concluded that Cassie's subsequent kidnapping was also performed intentionally.

In one last point, Appellant contends that he could not be convicted of capital murder because there is no evidence that he committed Jimmy's murder "in the course of" committing Cassie's kidnapping, as required by the relevant statute. *See* Tex. Penal Code Ann. § 19.03(a)(2). According to Appellant, Jimmy's murder was already completed before Cassie's kidnapping began. This argument overlooks Frank's testimony that when he returned to his house after Cassie was escorted away, he found that Jimmy was still alive and gasping for air, which means that the murder had not yet been completed. Because of this testimony, the jury could have reasonably found that Appellant intentionally murdered Jimmy in the course of committing Cassie's kidnapping. *See Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993) (holding that a murder occurs "in the course of" committing another offense if the murder occurs "in an attempt to commit, during the

7

commission, or in the immediate flight after the attempt or commission of the offense"); *see also Santellan v. State*, 939 S.W.2d 155, 163-64 (Tex. Crim. App. 1997) (en banc) (holding that the evidence was sufficient to support a conviction for capital murder where there was testimony that the defendant restrained and drove the victim away after the victim was shot in the head but during a time when the victim "may have still been alive").

We conclude that the evidence is legally sufficient to support every essential element of the offense beyond a reasonable doubt.

## II.      Evidence of Cassie's Extraneous Murder

In his next issue, Appellant complains about the evidence of Cassie's extraneous murder, which was admitted over his timely objection. Specifically, Appellant asserts (1) this evidence is irrelevant with respect to the charged offense, and (2) even if relevant, this evidence was substantially outweighed by the danger of unfair prejudice.

### A.      The Trial Court Erred by Admitting Evidence of Cassie's Murder.

We review the trial court's decision to admit evidence for an abuse of discretion. *See Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). "[T]he primary purpose of rules of evidence is to narrow the evidence offered at the trial to those matters which have logical and probative value in determining the guilt or innocence of the accused. Thus, to the extent that the law of evidence precludes decisions based on illogical conclusions, it aids the administration of justice." Barbara E. Bergman, Nancy Hollander & Theresa M. Duncan, Wharton's Criminal Evidence § 1:2 (15th ed.); *see also* Tex. R. Evid. 102. In furtherance of this objective, Texas Rule of Evidence 402 prohibits the introduction of irrelevant evidence. *See* Tex. R. Evid. 402.

Appellant was charged with capital murder of Jimmy; this charge required the State to prove Appellant both (1) intentionally murdered Jimmy and (2) did so in the course of committing Cassie's kidnapping. *See* Tex. Penal Code Ann. § 19.03(a)(2). To prove kidnapping, the State had to prove Appellant intentionally or knowingly abducted Cassie. *See id*. § 20.03(a). Abduction includes (in relevant part) "using or threatening to use deadly force." *Id*. § 20.01(2). The State did not prove Appellant killed Cassie; instead, it introduced other pejorative evidence against him (including evidence tending to prove he used deadly force against Jimmy) that insufficiently connected him to her death.

Extraneous offenses:

> may not be received into evidence unless and until there is a clear showing that: 1) the evidence of the extraneous offense is material, *i.e.*, going to an element of the offense charged in the indictment or information, 2) the accused participated in the extraneous transaction being offered into evidence, and 3) the relevancy to a material issue outweighs its inflammatory or prejudicial potential[.]

*McCann v. State*, 606 S.W.2d 897, 901 (Tex. Crim. App. [Panel Op.] 1980), *holding modified by Harrell v. State*, 884 S.W.2d 154 (Tex. Crim. App. 1994) (en banc) (citing *Murphy v. State*, 587 S.W.2d 718, 721 (Tex. Crim. App. [Panel Op.] 1979) and *Ruiz v. State*, 579 S.W.2d 206 (Tex. Crim. App. [Panel Op.] 1979)).[2] Clear proof means "proof beyond a reasonable doubt." *Harrell*, 884 S.W.2d at 158.[3] The State's

---

[2] Contrary to the dissent's assertion that we are "start[ing] off on the wrong foot by not beginning [our] analysis with Rule 404 of the Texas Rules of Evidence," we instead begin with binding authority that dictates when extraneous offenses may be received into evidence and need not go further because our analysis reveals the evidence is not relevant. While we acknowledge that appellate courts should not superimpose their judgment concerning relevance in all cases (*see generally Montgomery v. State*, 810 S.W.2d 372, 390-92 (Tex. Crim. App. 1990) (en banc)), the test itself requires examining relevance then balancing that determined relevance against "its inflammatory or prejudicial potential." We are not tasked with examining properly preserved relevance objections only to be precluded from reaching a conclusion it is irrelevant as a matter of law.

[3] *See also Harrell*, 884 S.W.2d at 166 (Clinton, J., concurring) (citing *Williams v. State*, 41

inability to prove Appellant participated in Cassie's death beyond a reasonable doubt made the evidence thereof prejudicial and inadmissible. *See Miles v. State*, 468 S.W.3d 719, 724 (Tex. App.—Houston [14th Dist.] 2015), *aff'd on other grounds*, 506 S.W.3d 485 (Tex. Crim. App. 2016) ("To determine whether evidence is relevant in a particular case, courts must 'examine the purpose for which the evidence is being introduced.' . . . There must be a 'direct or logical connection between the actual evidence and the proposition sought to be proved.'") (quoting *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009)).

Cassie's death had no logical tendency to make a fact of consequence concerning her kidnapping more or less probable than it would have been without her death, particularly because there is no sufficient evidence connecting Appellant

S.W. 645, 648 (Tex. Crim. App. 1897) ("before evidence of an extraneous crime can be offered, some cogent evidence should be adduced of appellant's connection therewith . . . ."); *Walton v. State*, 55 S.W. 566, 567 (Tex. Crim. App. 1900) ("there should have been some testimony indicating with a reasonable degree of certainty that appellant was guilty" of the extraneous offense); *Denton v. State*, 60 S.W. 670, 672 (Tex. Crim. App. 1901) (same as *Walton*); *Glenn v. State*, 76 S.W. 757, 758 (Tex. Crim. App. 1903) (before evidence of extraneous misconduct can be admitted, "there must be pertinent testimony tending to show that appellant" is the one who committed it, citing *Williams*); *Fountain v. State*, 241 S.W. 489, 491 (Tex. Crim. App. 1921) (that accused committed extraneous offense "must be shown . . . with reasonable certainty"); *Hooks v. State*, 261 S.W. 1053, 1054-55 (Tex. Crim. App. 1923) (same as *Glenn* ); *Wells v. State*, 42 S.W.2d 607, 608 (Tex. Crim. App. 1931) (that accused perpetrated extraneous offense must be "satisfactorily shown" to justify admissibility); *Shepherd v. State*, 158 S.W.2d 1010, 1011 (Tex. Crim. App. 1942) (same as *Wells*); *Clark v. State*, 165 S.W.2d 747, 748 (Tex. Crim. App. 1942) (that accused perpetrated extraneous offense must be "shown"); *Carmean v. State*, 290 S.W.2d 240 (Tex. Crim. App. 1956) (citing, at one point or another, all of the above); *Tomlinson v. State*, 422 S.W.2d 474, 474 (Tex. Crim. App. 1967) (State must be "prepared to prove that the accused committed" extraneous misconduct); *Landers v. State*, 519 S.W.2d 115, 118 (Tex. Crim. App. 1974) (quoting 23 Tex. Jur. 2d, Evidence, § 194, at pg. 294, for the proposition that the accused must be "shown to have been [the] perpetrator" of an extraneous offense before it can be admitted); *Fentis v. State*, 528 S.W.2d 590, 592 (Tex. Crim. App. 1975) (that accused committed extraneous misconduct "must be shown with some degree of certainty before evidence of [it] can come in"); *Tippins v. State*, 530 S.W.2d 110, 111 (Tex. Crim. App. 1975) (before the State may introduce evidence of extraneous misconduct, it must be "prepared to clearly prove that the accused committed" it); *Eanes v. State*, 546 S.W.2d 312, 315 (Tex. Crim. App. 1977) (echoing *Tomlinson* and *Landers*)).

thereto. *See* Tex. R. Evid. 401; *see also Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc) ("Where the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can be said the trial court abused its discretion to admit that evidence."). Legally sufficient proof of Cassie's kidnapping was introduced via Frank's testimony that (1) he heard a loud sound that resembled a gunshot come from his home; (2) he saw Cassie being escorted out of the house between Appellant and Amalinh into the backseat of another car before it drove away; and (3) he then went into his home and saw Jimmy dying from a gunshot wound. The trial court abused its discretion when it overruled Appellant's objection under Texas Rule of Evidence 402 to the introduction/admission of evidence of Cassie's death.

While it is easy to imagine a connection between Appellant's conduct and Cassie's violent death, such ease is the precise reason for our well-established prohibition against introducing irrelevant evidence. *See* Bergman*,* Hollander & Duncan, Wharton's Criminal Evidence § 1:2 ("These rules of exclusion stem from the concern that the jury would not be able to consider the evidence only for the purpose for which it is properly admitted."); *see also Montgomery*, 810 S.W.2d at 391 ("Moreover, when it is clear to the appellate court that what was perceived by the trial court as common experience is really no more than the operation of a common prejudice, not borne out in reason, the trial court has abused its discretion. In either event the appellate court should recognize that the trial court erred to admit the proffered evidence, and proceed to determine harmfulness under Tex. R. App. Pro., Rule 81(b)(2).").

Because Cassie's death was irrelevant, it had no probative value; because

Cassie's death involved violence and insufficient facts tending to prove Appellant's culpability, it was inherently prejudicial. This prejudice was unfair and substantially outweighed the non-existent probative value of Cassie's death relative to the charge alleged and the elements thereof. The dissent opines that "the danger of unfair prejudice was low"; we disagree and believe it was especially high, particularly given the insufficiency of the evidence of legal culpability for Cassie's death.

Therefore, the trial court abused its discretion when it overruled Appellant's objection under Texas Rule of Evidence 403. *See Montgomery*, 810 S.W.2d at 389 ("Once this objection is made, the trial court is called upon to weigh probativeness of the evidence against its potential for 'unfair' prejudice — that is, as the majority iterated on original submission, its 'tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'") (citing Advisory Committee's Note to Fed. R. Evid. 403); *see also id.* ("Indeed, the Fifth Circuit has commented that it reads the rule 'to *require* exclusion when prejudice outweighs probative value.'") (emphasis in original) (citing *United States v. Preston*, 608 F.2d 626, 639 n.16 (5th Cir. 1979)).

The dissent cites *Rogers v. State*, 853 S.W.2d 29, 32-33 (Tex. Crim. App. 1993) (en banc), for the proposition that "a reviewing court should not superimpose its own judgment over the judgment of the trial court when deciding whether extraneous-offense evidence is relevant"; we do not believe *Rogers* stands for the proposition cited. There, the Texas Court of Criminal Appeals (while examining a comparable question concerning relevancy relative to 404(b)) said:

> While this Court is not necessarily convinced of the relevancy of the marijuana evidence under that argument, we will not "superimpose [our] own judgment as to relevance over that of the trial court."

*Id.* at 32 (quoting *Montgomery*, 810 S.W.2d at 390).

In our view, the Court's language in *Rogers* reveals that it refrained from imposing its judgment *in that case*; the Court did not say that (1) it could not superimpose its judgment of relevancy on the trial court or (2) *Montgomery* held (or even implied) otherwise. Indeed, in *Montgomery*, the Court simply says,

> To the extent it suggests that an appellate court may always superimpose its own judgment as to relevance over that of the trial court, we reject this approach.

*Montgomery*, 810 S.W.3d at 391.

Therefore, we believe the dissent relies upon *Rogers* for a proposition that is not present therein.

### B.      This Error Affected Appellant's Substantial Rights.

Generally, the erroneous admission of evidence is non-constitutional error that we analyze for harm under Texas Rule of Appellate Procedure 44.2(b). *See* Tex. R. App. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Rule 44.2(b) provides that an appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights". Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Non-constitutional error is harmless if the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations. *Id*. "If the reviewing court is unsure whether the error affected the outcome, that court should treat the error as harmful." *Fox v. State*, 283 S.W.3d 85, 95 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

In performing this analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Id*.; *see also Torres v. State*, 424 S.W.3d 245, 260 (Tex. App.—Houston [14th Dist.]

2014, pet. ref'd). We analyze "any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). We also consider "overwhelming evidence supporting the particular issue to which the erroneously admitted evidence was directed, but that is only one factor in our harm analysis." *Torres*, 424 S.W.3d at 260. The burden to demonstrate whether the appellant was harmed by a trial court error does not rest on either the appellant or the State. *Coble*, 330 S.W.3d at 280.

Here, we conclude the erroneous admission of evidence of Cassie's murder affected Appellant's substantial rights. The jury charge at the end of the guilt/innocence phase provided the jurors with six options for their verdict: not guilty; guilty of capital murder; guilty of murder; guilty of felony murder; guilty of aggravated kidnapping; and guilty of kidnapping. The jury found Appellant guilty of capital murder, and immediately thereafter the trial court sentenced Appellant to life without parole. Multiple times throughout the five-day trial, the State referenced Cassie's death and manner of death, and introduced photographs into evidence of her dead body in connection with the kidnapping. Because the State so heavily relied upon Cassie's death throughout its case against Appellant, we cannot separate the potential harm of those statements from what the jury may have believed about Appellant's involvement in the State's case for kidnapping Cassie and murdering her boyfriend. *See, e.g., Jackson v. State*, 320 S.W.3d 873, 887-890 (Tex. App.—Texarkana 2010, pet. ref'd) (at the defendant's trial for capital murder, erroneous admission of evidence that the defendant committed a separate robbery was harmful error); *Booker v. State*, 103 S.W.3d 521, 537-540 (Tex. App.—Fort Worth 2003, pet. ref'd) (at the defendant's trial for aggravated robbery, erroneous admission of

evidence that defendant committed aggravated kidnapping and aggravated assault as part of the same incident gave rise to harmful error).

Extraneous offense evidence can have a significant impact on the jury's rational disposition towards other evidence because of the jury's natural inclination to infer guilt to the charged offense from the extraneous offenses. *See Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) (en banc); *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991) (en banc). And we cannot speculate what verdict the jurors might have decided upon without evidence of this extraneous act; it is entirely possible that they would have come to the same verdict without the improperly admitted extraneous evidence. But it is also possible that they would have decided upon a different verdict. This uncertainty renders the trial court's admission of evidence of Cassie's murder harmful error. *See Fox*, 283 S.W.3d at 95 Moreover, because the other offenses included in the jury charge carried sentences less than the life without parole sentence imposed on Appellant herein,[4] we find the erroneous admission of this extraneous evidence to have been harmful.

## CONCLUSION

We reverse the trial court's judgment and remand for a new trial.

---

[4] Specifically, the other offenses included in the jury charge carried the following punishments: murder, felony murder, and aggravated kidnapping, as first-degree felonies, carried punishment ranges of five to 99 years' imprisonment. *See* Tex. Penal Code Ann. §§ 12.32, 19.02, 20.04. Kidnapping, as a third-degree felony, carries a punishment ranged of two to ten years' imprisonment. *Id*. §§ 12.34, 20.03.

/s/    Meagan Hassan
Justice

Panel consists of Justices Christopher, Bourliot, and Hassan (Christopher, J., dissenting).

Publish — Tex. R. App. P. 47.2(b).